The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. All right, take a seat, please. All right, the next case we'll hear is United States v. Williams. May it please the court, good morning. I'm Edward Yeager of the North Carolina Bar on behalf of Mr. Williams. This criminal case has a lot of history. It actually goes back to charges in 1998 and a conviction in 1999. I obviously won't go through that history. I would just highlight that it included part of his conviction being reversed by the Ninth Circuit. And then ultimately, his judgment was amended to time served during the COVID pandemic. What brings us here today was what occurred in his supervised release hearing in 2023. The probation officer in Mr. Williams' case filed a violation report on March 10, 2023, charging new law violations, alleging that Mr. Williams had assaulted the mother of his two children and his on-again, off-again girlfriend with whom he was living at the time of that. The case actually came to court on November 23, 2023, so it was some eight months later. Despite that lapse of time, the government did not have as a witness the girlfriend, the alleged victim of the assault. They also did not explain why she was not present, and they were not able to show efforts they had made to locate her. Instead, they put on for testimony the Durham police officer who had taken her statement, as well as the body cam footage and written statements. Our position is that under Rule 32.1, which states that a person is entitled to question any adverse witness unless the court determines that the interest of justice does not require the witness to appear, that the district court erred in its finding of good cause by the government. This court has said in a number of cases that the standard requires balancing the defendant's interest in confrontation against both reliability of the out-of-court statement, as well as the government showing good cause for the witness not being there. Here, Judge Whitney correctly stated that standard. He used a balancing test, but we submit he erred in finding good cause. Judge Whitney stated that he was relying on U.S. v. Callen as highly useful. Judge Whitney's reliance on Callen was misplaced. He said, and I quote, it's a case very, very similar to the facts of this case, end quote. Later, he said, quote, the Callen case, as the government points to, is a case that the facts are extremely similar to the facts in this case, end quote. Callen is an unpublished decision of this court from 2021. Later, Judge Whitney quoted Callen, and the direct quote from the unpublished opinion in Callen is, quote, the government worked with local law enforcement to try to locate the victim for several weeks. The victim could not be found, so the government could not call her as a witness to testify. That's the direct quote from Callen. There's not much other explanation in the Callen opinion. In the transcript from the Callen case, I did find this statement from the AUSA. He said, quote, the United States has tried to locate her and has not had any luck in locating her. We spent time through the weekend where I had local law enforcement officers also try to locate her and was not able to locate her. We would point to his distinction in Callen is that at least the government made efforts to locate their witness before the hearing. In this case, the government's good cause came down to some efforts made after the first hearing and after the hearsay objection was raised. When they came back, and remember what Judge Whitney did was he ordered the parties to brief the issue. So he took testimony from the Durham police officer on November 8th, had the parties brief the issue, came back in January of 2024, at which time he reviewed the briefs and heard from the probation officer, and then he ruled that all the evidence which he had heard was admissible. So when the parties came back in January of 2024, they put the probation officer on. She testified that she last spoke with a witness on March 8th, 2023. The government asked about the efforts to locate the witness. All of those efforts came after the case was called for its first hearing. The probation officer sent a text message. She called and left a voicemail. She sent an email. And then finally she went to the home on December 12th. She also testified that she tried to use the Durham police domestic violence detective, Bone Gardner, that he called and left a quote, nonchalant voicemail for her. Unclear what a nonchalant voicemail is. In summation, the government said she simply stopped returning calls. She's moved away and we have no way of finding her. And she does not seem to want to be found. Well, what we would submit is there's no evidence that the government made any calls for her to return to them for eight months or more. In terms of moving away, the only evidence is that she was not at the same address. She could have been living next door. And when the government said she does not want to be found, well, it's really law enforcement's job to locate individuals. And here we see no investigative tools being used. Also, there's nothing in the record that the probation officer told the witness that after the violation report there would be a hearing and that she needed to stay in touch with him. Later on, after the judge had allowed the testimony, found the violation and moved to sentencing, the AUSA said there's a reason why she's not here and we would suggest that it's because she's afraid. That may very well be true, but there's nothing in the record to support that statement. There also is nothing in the record to suggest that the victim knew about the court date or that she even knew there would be a court date that she needed to stay in touch with him for. As I said before in the Callan decision. Can I ask you, what else do you think the government should have done here? Or was required to do? Not should have in the sense of going to the end of the earth, but what do you think is the minimum additional thing they would have needed to do to allow the district court to find that they had made reasonable efforts to locate her? I think the simple case would have been if the probation officer or any other witness were able to testify. We took a statement from her. We informed her that the court process would be we're filing a violation report and there's going to be a hearing and we may need you to testify. So please stay in touch with us. Give us a phone number where we can reach you. And then they call that phone number and she doesn't stay in touch with them. They call that phone number. It doesn't work. In that situation, do you think that would have been enough? Well, honestly, it's hard to say because people can change their numbers for numerous reasons. If the government had made any efforts before eight months had passed, I would say that probably rises to the level. But ignoring it, basically whistling past the graveyard until well past the hearing starts, I would submit as legally insufficient. Well, can I ask you, so this bottom line comes down to the government's essential assertion is we don't know where she is. Essentially the argument is we don't know where she is. What's your best authority for the proposition that if the government says we genuinely don't, we've tried to find her. Now we can debate whether we've tried to do enough to find her. But we've tried to find her and we can't find her and we don't know where she is. That's enough, right? Well, there's limited authority on that question. Right. Sure. Totally agree. And it's more or less for the court to determine after hearing what those efforts are. Sure. We would just submit that in this case. But I guess I would say just like for example under the Confrontation Clause, I'm thinking mostly of Ohio v. Roberts here, like we tried really hard to find them. Again, bracketing whether we tried hard enough, but we tried really hard to find them and we can't find them is sufficient to render a witness unavailable even when the Sixth Amendment right applies, right? And so it seems a for sure that in this context where there is no Sixth Amendment right and your protection is much weaker than it is a trial, if that's good enough to satisfy the Confrontation Clause, that has to be good enough to satisfy this rule, right? We tried really hard to find them and we just can't. I would agree if you tried really hard to find them. Okay. So now we're just debating whether they tried hard enough. Yes, sir. That's right. Okay. Okay. And I think that would be up to the district court judge to say, okay, what do you mean when you say you tried really hard to find them? And as part of that discussion, we would submit that when those efforts occurred also meant because if a government does not maintain contact with what is an essential witness for many months, it becomes much more difficult to find that witness. And at that point, I would submit more efforts are required to locate an individual. Well, assume that's a really, really close question. It probably is. But didn't the judge have the ability to determine the reliability of that hearsay statement? For example, in this case, she gave statements to two different detectives. Their stories jive. She took photos. They had the police took photos and they jived. Why doesn't that make her statements reliable and admissible in a close call of whether they made a good effort to find her? Because under several cases, including United States v. Ferguson, this court has also said that the court must find good cause for the government not having that witness available. Oh, I agree with you on that. But assuming that question is really, really close, which it is, does the judge not have the right to evaluate the reliability of that hearsay statement and admit it if he believes it's reliable? Yes, Judge Floyd. I would say he does have the right to and the obligation to evaluate the reliability of that statement. We would say also, however, that if he does not properly find good cause for the witness not being available, the reliability will not get him past that test. So, our position is that Judge Whitney correctly stated the balancing test, but he misapplied it. So, just so I understand, and I think this seems right to me, but I want to make sure this is what you're saying, is that there is a baseline that I think we have a case that says this, right? Like, it does not matter how reliable the statement is if there's no good cause whatsoever, right? These are separate requirements that you have to make some good cause to not find the witness. And even the most reliable statement in the world is inadmissible absent a showing of some efforts to locate the witness. And I suppose the other side is also true. There has to be some minimum baseline of reliability because, among other things, the Due Process Clause forbids you from admitting fundamentally unreliable evidence, right? Yes. And so, there's minimums of both of those. And if you don't hit either minimum, we're just done. Once you hit both minimums, we can sort of trade them off against each other a little bit as long as we're over the minimum threshold for each. Is that broadly how you understand how this test works? That would be reading a lot into the case law, which is not there. Totally agree. Perhaps that's why we're having this argument today because there's very little case law in this. That might be a fair argument. But then you're creating a separate balancing test between reliability and good cause. Sure. And how do you weigh those out? I would submit it. There is a little how do we decide if these apples outweigh these oranges, which is a fair question. But it seems to me that we've kind of said that, right? I think the case law… Well, but it does. But it speaks of the balancing test between the defendant's right of confrontation versus the government's obligation to show reliability and good cause. Do you think reliability is part of… I mean, it can't just be… The defendant always has an interest in confrontation. I mean, like at some level, that's a little confusing to me as well because the defendant literally always has an interest in confrontation. So it can't be that. Why isn't reliability sensibly thought of as part of the defendant's interest in confrontation? I mean, I realize that we have completely repudiated this approach in the Sixth Amendment context, but we used to do this approach in the Sixth Amendment context, that the more reliable the statement, the less the need for confrontation. I'm not sure of a good reason to answer that except that Rule 32.1 requires it. And also, when you look at the specifics of this case, what are we speaking about as reliable? We have a body cam video evidence, so we certainly believe that's reliable. Statements that were made by the purported victim of domestic violence, however, were not subject to cross-examination by the defendant. He raised a defense that perhaps he was not the perpetrator of domestic violence in this case. There's really no way to get to that. What hearsay is it that where she files a complaint with the police or calls the police, and that's direct evidence that they can respond to, and they also viewed her physical condition. That's not hearsay. That's direct evidence that they can testify to. They can't testify to what she said or her explanation, but it seems to me there's a lot of independent non-hearsay evidence that doesn't even need reliability. Well, all evidence needs reliability, but that could be considered direct evidence. Yes, Judge Neimeyer, we would agree. There is that amount of evidence that's in the case that Judge Whitney had to review and to determine. Our position in the end, though, is that the efforts the government made to locate the witness were too little and too late, and we would ask this court to follow its holding in Ferguson and other cases that unless the government makes a showing of good cause for why the relevant witness is unavailable, hearsay evidence is inadmissible out of revocation here. We would ask you to reverse the district court's order. All right. Thank you, Mr. Hanke. Thank you. Mr. Greenough. Ms. Greenough. Excuse me. May it please the court. Elizabeth Greenough on behalf of the United States. The district court acted well within its discretion in admitting the victim's statements at the revocation hearing, and I'll turn to the good cause standard first. I have plenty of evidence of reliability, but I think where we're differing, perhaps, is over the good cause. Because you agree that our existing authority doesn't establish a lot very clearly, but one thing it establishes very clearly is, right, no matter how reliable, absent some showing of good cause, you can't admit this evidence. That's correct. Because Doswell, Ferguson, and the Woods case, I believe that he cites, in all three of those cases where it was sent back, there was no evidence at all put on of good cause and here, of course, we did have evidence put on of good cause. Can I ask you what I'll call the timing question? Based on the record, is it in fact true that there's no evidence the government ever attempted to contact this witness until after he objected to admitting her out-of-court statements against him? So based on the record, I think it's ambiguous, but I do think that there are indicators that would show there were earlier efforts made. When the prosecutor asks the question, what efforts have you made, he couches it in, since you spoke to the witness in March. And then there also is the statement that he says, I informed defense counsel prior to the hearing that the witness would not be here. So that, to me, provides some indication that there were efforts to contact her earlier. But the things you just said, those are your two best support in the record for the possibility they tried to before. That's the support in the record, yes. And you can tell from what the probation officer did. She tried texting her. She called her. She left a voicemail message. She talked to the domestic violence detective and obtained an email. She tried emailing her. When none of those efforts worked, she actually went to her last known address. And again, someone else was living there, said he'd been living there since July, had no idea who the victim was. And so the government decided, you know, this is what, we can't locate her. We've tried, she will not return any messages. We don't know where she's at. Can I ask you the question I asked your friend on the other side, which is, how do you think this standard for unreliability or good cause here relates to the constitutional standard for unreliability? Like, it seems obviously that it's not a higher bar than the constitutional standard, and I assume you think it's a lower standard, but how much lower is it? Well, I guess, I assume you don't think it's higher than the Sixth Amendment on availability. Definitely not. But if it's lower, how much lower, you know what I'm saying? In terms of availability or reliability, I thought. Availability.  And I guess I'm going to, the strand, I mean, there are some unavailability cases that are easy, like the declarant is dead, the declarant is in a coma, but I'm talking about the Ohio versus Roberts. We tried to find them and we just can't find them. That strand of unavailability under the Sixth Amendment. Right. How does the standard under this rule in your view relate to that strand of Sixth Amendment unavailability? Well, I think it's a lot lower because, as the court said in Doswell, this is not a Sixth Amendment right. Here we're at a supervised release revocation hearing. It falls under due process, which is Rule 32.1. So it is a lower standard, and the federal rules of evidence don't apply. So Federal Rule of Evidence 804 talks about unavailability for witness. So it's also lower than that. Correct, yes. So I think there is not a lot of authority on where that line is, but we know from the cases where it's not done at all, that's not good. And I haven't really seen much in the way of these efforts weren't enough. And if you look at the case law, you'll see the Second Circuit's decision in Pogaro, which says even if you can find the witness, if they don't want to appear, and it happens a lot in the domestic violence situation, these are witnesses who are afraid, who have had a long history with the defendant, and it's asking a lot for them to come in for these. So for example, so that this leads to the obvious, like the witness doesn't want to. If only the government had ways of making people who don't want to do things do them, except the government does. So do you have to subpoena them? I mean, like lots of people tell lots of people they don't want to do things. Correct, yeah. And so the issue here isn't whether we could have done more. I think the issue is what were we required to do? Did we do as much as we needed to? We didn't know where she was. It'd be really hard to subpoena her without an address. Or be an empty duster. You can subpoena, like cool, you can do that, but that's not going to really fix the problem that we don't know where she is. Right, and in cases where, I think it was the Martin case from the Eighth Circuit, where they did in fact subpoena the witness for state court, and she refused to, well, she showed up at court, but refused to testify. And then when we were calling the same witness, the government, for the revocation hearing, we said it would have been futile to bring her here. And the Eighth Circuit said that was fine. Because she already previously refused to testify in state court? Correct. So you brought up the domestic violence. How important is it to your argument on good cause that this is a domestic violence case? I'm just trying to figure out how much the nature of the underlying offense or alleged offense intersects with good cause. Is that a suggestion that you can spend less efforts trying to get domestic violence victims into court? Or is it that the fact that you were unable to do so is more likely to not be a problem? You know what I'm saying? Let me just ask the first question. Are you suggesting that it means that you can have less efforts because it's a domestic violence case? So I think it's one of the factors the court should weigh. It's obviously the court's discretion. Wait, so the nature of the crime affects, or the alleged crime or the alleged violation, affects how hard the government has to try? No, I think it's what the role of the witness that they're trying to obtain. So I think, and I guess to some extent it could be the nature of the crime. But really, I think in this situation, that's why we don't have a lot on this because it's something that's within the broad discretion of the district court to balance those factors out and figure in this situation where we know this woman was strangled and thought she was going to die and she hasn't kept in touch with the probation officer or appeared and she's moved, we should not be requiring the government to do more than it did here. And I do want to talk a little bit about the reliability information because that was very, very strong here. And I think you were asking before about if there's a lot of reliable information, does that mean perhaps there would be a lower standard in terms of showing the good cause? And I do think originally the rule required just a showing of reliability and then later on it was amended to include the showing of good cause as well. So I think that also plays a role here. Oh, that's a Morrissey issue, right? Correct, yes. So the district court properly found there was very reliable evidence here. I think Judge Niemeyer, you mentioned there's a video of her statement. The court could look at her demeanor in that statement. There's also photographs that she took. Her demeanor is not hearsay. Like how she's behaving is not hearsay. Right, yes. She has the photographs, the metadata showed those were taken, the date of the incident, the ones that she took, the day after, the police took more photographs. I also want to mention that there was an outstanding warrant that the probation officer found for Mr. Williams' arrest regarding another assault that involved grabbing a woman by the neck. So there is that independent evidence. And I know he tries to suggest that perhaps her husband could have been responsible for this. But one, there was no evidence before the court that her husband was ever around. And two, when he did, before the court made the reliability determination or the admissibility determination, and when Mr. Williams testified regarding that, when he did enter his own testimony, he said that he had heard that the husband might be in town, but he had never seen him. And of course, there was no evidence that the husband would have been violent. So if there are no further questions, thank you very much. Thank you. Mr. Yeager? Your Honors, I won't belabor what has been said. What I would submit, though, is when we talk about those efforts, when the issue of issuing a subpoena comes up or anything else, that wasn't done here. And when we go back to the idea of what the minimum should be, I would submit that when the probation officer talked with the victim, there probably would have been some conversation that we're going to issue something to revoke his probation. There's no evidence that the victim was ever told, we might need you in court. We might need to stay in touch with you. What about the statements that the counsel, Ms. Greenaw, suggested where you were told he wouldn't be available and that those statements she alluded to that indicated prior efforts to discuss with the witness and get her to the hearing? Yes, Robert, and I heard her say that the record is ambiguous, but there are indicators that the defense counsel was informed. I'll be honest, having read the record several times, it was not clear to me from reading it that they put that on record that they had made efforts to locate the witness and that she was informed. No, no, no, I think she agrees. It's just my implication. Yes, and I think that's the best that we have. Thank you, that's all. All right, thank you very much. We'll come down and greet counsel and then ask you also to approach the bench and greet Judge Floyd. Oh, yeah. Yeah, Mr. Yeager, you're court appointed. I really want to express our appreciation for that service. As you know, it's very important to us and for the whole community and you did a fine job. We want to thank you.
judges: Paul V. Niemeyer, Toby J. Heytens, Henry F. Floyd